Good morning, your honors, counsel, and may it please the court. My name is Ed Blau, and I represent the appellant Jared Brook in this matter. I was appointed pursuant to the CJA Act both in the district court level and in front of this court, and this is my first oral argument before this court. Your honor, this Fourth Amendment litigation began with our motion to suppress what we felt was a bad inventory search of a vehicle in which my client was a passenger. The government responded at the district court level, and when the government responded, they gave short shrift to the inventory search, in my opinion, and then focused on what they believed was a proper probable cause search. They haven't pursued inventory search on appeal, have they? There's one footnote, I believe, on page 14, your honor, where they mention it, and they still believe, according to the footnote, that it was a good inventory search. If your honors want me to move beyond inventory search and go into probable cause, of course, I'm more than happy to do that. Thank you, your honor. The government has argued that there was probable cause because my client was implicated in a burglary eight days before, and based on his two co-conspirators, they said that he had a couple of guns, some ammunition, some magazines. The second reason the government gives is because my client was stated to be a transient by one of the co-conspirators. And the third reason is because my client allegedly fled when he came into contact with law enforcement. We have to look at each one of those individually, I believe, because obviously, this is a de novo review. And in looking at, of course, the factual findings are for clear air, but in looking at the district court's ruling, he went based on the police reports that were submitted, and he went based on argument of counsel. He really didn't see. Nobody requested any further testimony. And the reason why I think that is significant as this is that for this Fourth Amendment review, we have to look at an objectively reasonable officer and whether or not he or she would feel like they had probable cause. One thing that I think it's very important to look at, Your Honors, is that the entire record of this arrest and this search, not a single officer anywhere ever said they believe there was probable cause. Not a single one ever gave a reason why they felt there was probable cause. When my client was arrested, law enforcement went directly to- Why do we care about that? Because you're talking about the subjective view of the officers in question. We're talking about the objectively reasonable officer. I understand that, Your Honor. And in looking at Judge Russell's ruling and what this court's going to have to rule, all I can do as my client's attorney is look at the facts as they are. And of course, argue that the three reasons the government gave why there was probable cause, I'm pointing out to the court that the facts on the ground don't seem to back up the government's arguments. And with respect to my client allegedly having these guns based on the word of his two co-conspirators, the government relied on the Miles case. And the Miles case was a search warrant case where 18 days passed between a reliable, confidential informant who gave law enforcement the place where the guns would be, or the contraband would be. A search warrant was issued. The defendants filed a motion to suppress, and the court overruled that. The reason why I think that's important is this, of course, is a de novo standard. And in that particular case, this court was reviewing the granting of a search warrant by a detached magistrate. I don't believe that, with respect to the government's argument here, that those two things are equal. I believe that higher standard is different than this. There are different aspects to probable cause to search a place. First is probable cause to believe that your client had guns. Yes. Do you dispute that? Don't you think there's enough here for probable cause to believe he possessed guns? Based on the record, no, Your Honor. Really? No. So you couldn't? OK. The two things, one, the number of guns that were stolen that my client was involved in, it was a long gun, several pistols, several magazines, eight days had passed. I don't think it's reasonable to believe that somebody involved in a burglary eight days later would have that contraband still on them. And I believe the government's position that, well, he was a transient, so it would make sense that the transient issue goes to where he would keep them. Correct. Two issues. Does he have them? And is there a likelihood that they would be in this vehicle? So I want you to distinguish between those two. Because when you're saying there wasn't even probable cause to believe he had guns, then the precedent you were talking about earlier, 15-day gap, would seem to refute your argument that there was some probable cause. The difference in that case and this one is, in that case, at least as you described it, the informant said he had the guns in this particular place, I think where he lived. And we don't have that here. We're missing, at least it's a separate question, whether there's reason to believe they're in the vehicle. But I don't see how you can argue that there isn't probable cause to believe that he possessed those weapons still, even eight days later. How many were stolen? Four that were attributed to him? Six. And it was conflicting testimony. Basically, two short guns and maybe one long gun and the corresponding magazines and bullets and that sort of thing. I understand Your Honor's point. I disagree just from the sense of, based on the totality of the record and based on the government's position, they never argued that he had them on his person. They argued that he had them in the vehicle. They also argued that that was likely because he was a transient. When they looked into, when law enforcement actually looked into the pickup, they didn't see my client's clothes. They didn't see all of his belongings. They saw nothing in there that would indicate that's where he kept everything. The bed of the pickup was exposed, is that right? Yes, it was a pickup truck. There was nothing in the bed and the ammunition was found inside behind the seat. Correct. And the reason why I keep going back to what a reasonable officer, objectively reasonable officer, would believe is that in this particular instance, I have to assume, for argument's sake, that the officers who were there were reasonable. And I realize that looking back and reviewing this based on a cold record and based on what we see the totality of the circumstances to be, we may be able or that may be able to be found. But the actual officers at the scene gave no indication that they believe that. While I understand that this is a de novo review, Judge Russell himself said that he felt that this was, what he said, to be a close call. I believe it's somewhat of a close question. I believe that law enforcement did not have probable cause to search the U-Haul. I believe that had they believed they would have, they could have either asked for a warrant or they could have come up with some kind of rationale. They did not do that. Your Honor, I don't believe the- Mr. Blau? Yes. Let me ask you about the probable cause issue this way. What, based on your review of the record, do you think was the weakest link in the probable cause determination? What should we really be focusing in on? I believe the third prong that the government put forward that my client fled is extraordinarily weak. There was absolutely zero evidence that my client knew law enforcement was surveilling this residence. There was no evidence that law enforcement, that he knew law enforcement was there. He did not flee until he was caught  My client, he was not able to get away. Had a methamphetamine addiction. He had been involved in a burglary and he sees a bunch of cops. Of course he's going to take off, but I believe that it is extremely tenuous to say that he fled and tried to get away from that pickup truck where he knew the contraband was when he was in an apartment, maybe 100, 150 feet away on the second floor. That just does not seem to be a realistic argument put forward by the government. Let me ask you a question about, I have a question about the record. At one point in your brief there on page three, there's reference to an informant telling the government that, well, I'll just read it, that Mr. Brooke was driving a U-Haul pickup truck. Now when he was observed before the search, he was a passenger in the truck. Does it make a difference whether he's driving it or was a passenger to the probable cause determination? Your Honor, I don't believe so. I believe that he would have the same expectations of privacy regardless and- Well, I'm not talking about his expectation. I'm talking about whether the officers had more reason to think that the stolen guns were in the U-Haul because he was driving it as opposed to being a passenger. I think it would give them less reason to believe there was probable cause because he was the passenger. It would seem that the woman who was driving, Alexis Woods, if she were driving it, it would seem that she would be more, I guess, in control of the vehicle than Mr. Brooke would be. All right. Well, then that really brings me back to my question because if an informant had seen him driving the truck, having that kind of control over the truck, that may be an important fact. And my question is whether the record clearly establishes that. Is that in the record that someone saw? I mean, it's in your brief, but I've been having trouble finding it in the record. Your Honor, if memory serves, it was the confidential informant said that he was seen in the U-Haul vehicle. To my memory, I do not believe that there was evidence or that anybody said that my client was actually seen driving the vehicle. Of course, I can go back and find that here in a moment, but I don't believe that's the case. All right. We can keep checking, but I had a question about that statement in your brief. Yes, Your Honor. Thank you. Your Honor, I have about two minutes left. May I reserve? Thank you. May it please the Court, Steven Kroeger on behalf of the United States. Would you please clarify this last issue? I was just about to get to that. The record citation would be page 70 of volume one on the record on appeal. And the quote would be, we were also told that he had been driving a, quote, U-Haul pickup, close quote. Who said that? That was from the report of investigator Mike Sharp. And was he on the scene? The officers on the scene. I mean, there's some evidence tying him to the truck that wasn't known at the time of the search, for example, that he had rented it, that he was the person who had rented the U-Haul. So did the officers at the scene, is there anything in the record to show that the officers on the scene have any information that the defendant had been driving the U-Haul? Well, he was not on the scene at the very beginning when they first saw him pulling up as a passenger. Investigator Sharp, according to his report, was there whenever they were trying to coax Mr. Brooke down from the roof, which occurred prior to the search of the pickup. So he was present before this pickup was searched. That was Sharp, did you say? Yes, Investigator Sharp. There are a few points that I would like to also clear up based on some questions that were asked and statements that were made just a moment ago. First of all, Mr. Bullough has suggested that this court should look at each factor individually, but that's not the test this court uses whenever examining probable cause. The question is whether there's probable cause based on the totality of the circumstances. In fact, the Supreme Court recently, as recently as District of Columbia v. Wesby, has counseled against a divide-and-conquer approach to factors in determining whether or not there was probable cause. Second, I apologize, I thought Judge Matheson had a question. Second, Mr. Bullough has pointed out that the officers never said there was probable cause, but just the same, the officers never said there was not probable cause. While the inventory search may have been almost on their mind, at the end of the day, one, this is an objective inquiry. Two, even if this court were to be influenced by what the officers had said, they never said we didn't believe there's not probable cause. Third, to correct the record as to what was in the bed of the pickup, the record actually indicates there was items in the back of the pickup. One of the items the police recorded was a shoebox that I believe had a magazine or had ammunition in it that was in the back of the pickup. Now, it's true the reports don't say exactly what the condition of the pickup was and if there were clothes in there or if there were bags, but it does say that items of evidentiary value, as I said, either bullets or magazines, were located in a shoebox in the back of the pickup. And as far as Judge Matheson's question with regard to the weakest link in Mr. Bullough's response, that flight was the weakest link, I'll concede. Flight is probably the weakest link. It's the cherry on top of the sundae of the probable cause analysis. The Supreme Court in Husty and this court in Taylor and Wray has explained that flight is a factor to be considered, but admittedly, it's not a strong factor, considering. It's awfully weak when the flight isn't from the location that you're trying to connect them to. Well, Your Honor, I would submit that that, in fact, is a questionable, not your statement, but the assertion that he wasn't fleeing from the vehicle is questionable. At the time that police searched the vehicle, they had talked to the manager of the property, they had talked to the resident or the tenant of the apartment in which Mr. Brooke had initially been found, and both of them said that he was not supposed to be in that apartment building or in that apartment. That's supposed to be, he was banned from it or he wasn't a tenant? One, he was not a tenant, but both of them, I believe, had said he was not supposed to be there. What does that mean? The record's not clear as to what that means. My guess would be he was never invited in, he was never asked to come in or allowed to come in. As far as what the tenant said, he said that he had been at work and he had left his apartment unlocked and that because it was locked and nobody else had a key, somebody must be in there. What Mr. Brooke had done is he had put between himself and the pickup truck not just one locked door, but two locked doors. Police, before they encountered him, had to go through two locked doors, one they had a key to, the other they had to breach. In fact, he was jumping in and out of windows by the time the police broke through that door, going in and out of apartments and on roofs until he finally surrendered on the opposite side of the building. He was trying to distance himself from that pickup truck. I assume that there was evidence he was visiting someone in the apartments, but there was nothing to connect him to these apartments, is that what you're saying? The only evidence connecting him to that address, and there was no evidence connecting him to a specific apartment, but the only evidence connecting him to that address was the same confidential informant that had said they had seen him driving the U-Haul pickup truck, and it was that he frequented that address. They didn't say he frequented a specific apartment, which is why they had to go through apartment by apartment looking for him. But it doesn't seem like there's any evidence that he exited the pickup because he was concerned about cops. There's no evidence at that point that he knew he was being surveilled. Was there? No, I would say there's not. So when he was fleeing, he was fleeing cops, but I don't see how you can say he was fleeing the pickup. Well, he was going, he clearly was going away from the pickup truck. He wasn't going towards the vehicle that he had been driving in the seven days earlier. Oh, that wouldn't have made a lot of sense if he's trying to get away from the cops anyway. I think I'll run into the parking lot, into that pickup so they can follow me while I'm driving the pickup or whatever. Anyway. I would suggest that it might make less sense if you're trying to evade cops to go on foot than trying to get in a vehicle that can go much faster. Mr. Crager, just getting back, I think to the basic question, why was it reasonable for the officers to think that there were stolen guns in the U-Haul? When U-Haul pick pulls up, Ms. Woods is the driver, Mr. Brooke is the passenger. He gets out. From all outward appearances, it looks like she's just giving him a ride home. So what is the chain of reasoning to the conclusion that there's probable cause there were guns in the U-Haul? Well, your honor, I think we would start with the fact that he had been observed driving the U-Haul pickup truck in days prior to that. So he had a stronger- And that came from an informant, is that correct? That's correct, your honor. And so, and they knew that at the time. There was the fact that he had been a passenger in the pickup truck. There was no indication that they had found any guns or any evidence of the burglary in the apartment where he had hidden himself, or where he at least had entered. They had already arrested him by the point that they searched the pickup truck, would have done a search and sent to arrest, found no evidence on him. You start narrowing the scope of places where the evidence could be, and then you add to that the fact that he had the, had had the vehicle for at least more than one day, multiple days, and had been driving it. All of that provides a reasonable probability that the evidence would be in that truck. Now, it's very possible that the evidence might be also in another location. But this court, in the context of probable causes, explained that probable cause is a standard less than a preponderance of the evidence. Thus, it might be equally likely that the evidence is in another location as it is in this location, but just because the evidence of one item being in two locations is an equipoise does not mean that there's not probable cause. In fact, the suggestion. How important to your argument is the information that he was a transient and didn't own his own vehicle? Well, Your Honor, that, again, decreases the likelihood that his possessions would be, or anything that he was continuing to carry would be in a house that he owned, or in another vehicle that he would have owned. You start eliminating those places, and so his transience, with the fact that he had this truck previously, in the intervening eight days, would further bolster finding probable cause. The transient bubble, so to say, would be, I think as Judge Hart suggested,  I would submit that there is very strong evidence, or at least strong enough evidence based on his two co-conspirators that he still had possession of the guns. So the question is, if he has possession of the guns, where does he have them? They're not on his person. They're not, at least, it is less likely, because police had been in there, that they're in this apartment that he was found in. He's a transient, he doesn't have a house of his own, he doesn't have a car of his own. So what's left is this truck that he had been driving around and which he was a passenger of. Did they look in the apartment where he was discovered for weapons? Is there any indication in the record about that? Sorry, I apologize. Is there anything in the record to show that the officers, after finding that he had been in one of the apartments there, that they looked in the apartment and found the weapons there? There is no indication they conducted an extensive search. There is, the reports say that they sweeped trying to find Mr. Brooke before they entered into, before they reached the door of the bathroom. And there is not any indication, which you would expect in a report, that any guns were found in that room. I'm happy to answer any other questions the panel may have. If there are none, I'd ask that you affirm. Thank you. Thank you. Thank you, counsel. Case is submitted and appellant counsel is excused.